**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| RODNEY OOTEN, SR. o/b/o) | ) |
| RODNEY OOTEN, JR. (as legal | ) |
| guardian and natural father) and | )    CIVIL ACTION FILE |
| RODNEY OOTEN, JR., | )    NO. 1:19-CV-0237-ELR |
|      Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| FULTON COUNTY, GEORGIA and | ) |
| FULTON COUNTY SHERIFF'S | ) |
| DEPARTMENT and/or FULTON | ) |
| COUNTY POLICE DEPARTMENT | ) |
| and SERGEANT COREY HENRY, | ) |
| individually and in his official | ) |
| capacity, | ) |
|      Defendants. | ) |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**COMES NOW** Plaintiffs Rodney Ooten, Sr. and Rodney Ooten, Jr. (hereinafter "Plaintiff" or "Mr. Gordon"), by and through undersigned counsel, and hereby files this, his Memorandum in Opposition to Defendants' Motion for Summary Judgment and his opposition to Defendant's statement of material facts. In support, Plaintiff states the following:

## STATEMENT OF FACTS

On or around January 18, 2017 law-enforcement officers of Atlanta Police Department, Fulton County Police, and the Fulton County Sheriff's Department

responded to a robbery at a Wells Fargo bank located at 1120 Fairburn Road, Fulton County Georgia (Plaintiff's complaint ¶ 9). Plaintiff, Rodney Ooten, Jr., a juvenile at the time (R/O Tr. 49)[1], was lawfully in the area and had not committed any crimes (Plaintiff's complaint ¶ 13). Plaintiff did not match the description of the "adult" robbers (Plaintiffs' complaint ¶ 14). At no time was Plaintiff Ooten Jr. involved with the suspects of the bank robbery (Plaintiffs' complaint ¶ 17). The Fulton County Police and the Fulton County Sheriff's incident report, produced by Defendant in discovery, and attached as Exhibit 1 to Plaintiff's verified complaint, states as follows:

**Narrative**

> *January 18, 2017 at approximately 1230 hours, I Sergeant C. Henry#2404 was notified through radio dispatch of a robbery in progress at the Wells Fargo Bank located at 1120 Fairburn Road, and that there were several suspects involved. Upon arriving to the location, I positioned myself on the bridge on Fairburn Road near the rear entrance to Walmart. Radio dispatch advised that the suspects were spotted running on the train tracks near Fairburn Road. I along with Deputy C. Cost observed a black male running east bound on the train tracks towards our direction. I further observed Officer Burkhardt with the Fulton County Police Department pursuing this suspect on the train tracks. Officer Burkhardt caught up to him and detained him on the train tracks just west of the Fairburn Road over pass where we were standing. I further observed three additional black males coming across an open field just south of Officer Burkhardt and the detained suspect's location. The three male subjects started running away back into the wood line in the direction of Cascade Road when they spotted Officer Burkhardt on the train tracks. There were several Officers from Fulton County Police, Atlanta Police, along with Sheriff's Deputies on scene attempting*

---

[1] R/O references the deposition June 22, 2021 of Rodney Ooten, Jr.

*to locate the remaining suspects. Radio dispatch advised that one of the suspects was being pursued by Officers on Mays Crossing. I responded to that location and observed several Atlanta Police Officers running through the back yard at 3767 Mays Crossing and down into the woods. I exited my marked Sheriff's K9 patrol car, retrieved my K9 partner Kojack who is trained to track fleeing suspects, and walked over to the woods in the back yard. I along with K9 Ko jack, Deputy Cost, and Officer Rowland did not enter the wood line at this time but we stood at the edge of the Wood line trying to visually locate the suspects. Kojack began pulling me into the woods and starting barking. I observed a black male wearing a black coat which matched the description given over the radio at the bottom of the hill approximately 15 yards deep into the woods. I announced" Fulton County Sheriff stop". The subject later identified as Rodney Ooten, looked directly at me and K9 Kojack and started running away from us and up the hill. I shouted again for him to stop or I would release the dog but he failed to comply and continued running. Ko jack was deployed and apprehended him on his left leg and was immediately removed. As I was removing Kojack from the woods I observed two additional subjects later identified as Christopher Williams and Lexington Jackson at the top of the hill lying face down on the ground. Both were detained by Deputy Cost and Officer Rowland. Grady EMS unit 396 responded to the scene, rendered first aid to Rodney Ooten, and transported him to Grady Hospital for further treatment. (R/O Tr. 105 – 111)*

Paragraph 15 of Plaintiff's verified complaint states that Defendant Henry, without <u>adequate</u> <u>notice</u> <u>or</u> <u>opportunity</u> <u>for</u> <u>compliance</u> deployed his k-9 dog who charged and attacked Plaintiff Ooten, Jr. Plaintiff Ooten Jr. suffered multiple dog bites wounds to his left leg and was taken into custody and was transferred by EMS to Grady Hospital where he was treated for his injuries (Plaintiff's complaint ¶ 16, R/O Tr. 86-88, 161-165). Plaintiff was never charged with or convicted of any offense as a principal or party to the crime of robbery and Plaintiff has never been prosecuted or convicted of any crime related to the incident date January 18,

2017[2] (R/O Tr. 37, 167 - 168). Plaintiff brought claims under 42 U.S.C. 1983 for false arrest (Plaintiff's complaint ¶ 19 - 24); false imprisonment (Plaintiff's ¶ 32 - 36); and use of excessive force (Plaintiff's ¶ 37 - 46). Plaintiff also brought state law claims for negligence and intentional infliction of emotional distress (Plaintiff's ¶ 47 - 61). Plaintiff was deposed on January 22, 2021. Plaintiff testified that on the date in question he, and several of his friends, who were all enrolled in Benjamin E. Mays High school were together, but were "skipping class" (R/O Tr. 31 – 32). Plaintiff testified that as he and his friends were walking through the woods, they came upon a police officer (not defendant) and they told the officer they were students and even gave the officer information as to how to get out the woods (R/O Tr. 39 – 40, 42 - 43). Shortly after that encounter with that police officer Plaintiff heard other police coming out of the woods and "they let the k-9 go", though Plaintiff was telling them that he was a student (R/O Tr. 39 – 40). Plaintiff further testified that Defendant Henry deployed the canine during a time Plaintiff was urinating in the woods and trying climb a hill to re-unite with his friends (R/O Tr. 55). Plaintiff testified that he did not try to run away from Defendant or police (R/O Tr. 55) and just stood there "and the dog was let loose". Although able to hear, Plaintiff testified that he never heard Defendant Henry or

---

[2] Defendant Henry wrote a juvenile citation for obstruction that Plaintiff states was never served on him and Defendant Henry had no original to produce in discovery (Henry Depo. Vol II Tr. 53:18-25, 54:1-25, 55:1-25, 56:1-25). Plaintiff testified he was never and has never been prosecuted or ordered to appear in any court for that juvenile citation (R/O Tr. 168:1-13).

any police say "stop, or I'll release the k-9" (R/O Tr. 57). Plaintiff testified that after slipping down and falling backwards as he was trying to get up is when he saw the dog and was bitten (R/O Tr. 65 - 67). Plaintiff was emphatic that but he never ran from the police or dog, but was trying to walk back up a hill to reunite with his friends (R/O Tr. 109, 158 - 159). Plaintiff testified at the time of the incident he was 16 years old, 5'5, 125 pounds and light-skinned (R/O Tr. 153). Plaintiff testified he never threatened, possessed or brandished a weapon or object towards any police (R/O Tr. 154, 159, 161). Plaintiff testified that approximately 20 seconds elapsed from the moment he heard the police to "next thing being the bite of the dog" (R/O Tr. 165). Plaintiff testified that at no point in time in the woods was he laying down on his stomach and then jumped up to run away from the police (R/O Tr. 166).

The Fulton County Police CAD (dispatch audio/transcript), provided by Defendant in discovery, radio transmission gave descriptions of the robbery suspects as follows (See Exhibits 1 - 4 to Plaintiff's Opposition to Defendant's Motion for Summary Judgment):

- 3 subjects wearing dark colored "hooded sweatshirts and <u>jeans</u>"
- 2 black males all black, 1 black male white hat
- Black male dark blue jacket/ <u>blue</u> <u>jeans</u>
- Black male 6'0 thin build dark blue track jacket with white pinstripes around the sleeve/blue jeans medium length dreads in hair

- Possible dark blue Adidas jacket
- Black male dark blue jacket/ <u>dark</u> <u>blue</u> <u>jeans</u>
- 3 in custody but S/78's don't match descriptions.

Plaintiff testified that he was wearing school uniform khaki pants, white shirt, and black bubble jacket (not a hoodie sweatshirt) (R/O Tr. 45-46).

Police dispatch radio (Fulton County Police Department) provided in discovery, in pertinent part state:

**Police dispatch radio: SyncedWithoutSilence_-_51001_-FCPD_MAIN_- 01282019-012518P** (See Exhibit 2 to Plaintiff's Opposition to Defendant's Motion for Summary Judgment):

- 13:12 – Officer (531) states "there are 3 kids down here, they're not involved) – officer (531) was on the railroad tracks
- 14:38 – There is one more outstanding suspect
- (12:05/14:38) Last suspect described as a black male, about 6 ft., thin, a dark blue track jacket with white stripes on the sleeves, dark blue jeans, and medium dreads/twist.
- 21:50 – Officer (255) states "Just passed some kids, the kids didn't see him either – officer (255) was on the railroad track
- 22:15 – Officer (255) states he was in the woods "so don't release the dog" - officer (255) was on the railroad tracks

The January 18, 2017 use of force incident report (See Exhibit 5 of Plaintiff's Opposition to Defendant's Motion for Summary Judgment), signed by Defendant Henry, provided by Defendant in discovery, states:[3]

- K-9 was deployed
- K-9 bite
- Subject ignored verbal orders and passively resisted and fled.

Fulton County Sheriff's Canine (K-9) Unit policy provided by Defendant in discovery (relevant to that incident date) provides, in pertinent part as follows (See Exhibit 6 of Plaintiff's Opposition to Defendant's Motion for Summary Judgment):

## VII. Canine Utilization

(C) Application of a Canine does not constitute the use of deadly protective action, but rather, is considered to be an intermediate response. In this, as in other cases, handlers may only use that amount of force reasonable and necessary to apprehend or secure a subject(s).

## VIII. Call-Out Procedures/Responding Deputies:

(C) The following guidelines are to be adhered to by responding Deputies once a Canine Team is deployed:

1. Secure the area.

2. Do not enter an area or allow anyone to enter the area or building to be searched by the Canine Team. If contamination occurs, describe the affected area to the handler. Prior to commencement of the search, ensure all responding deputies have exited the search area.

3. The Canine Handler will inform all law enforcement personnel on the

---

[3] Defendant's Attorney stated as an officer of the Court that all documents provided to Plaintiff by Defendant's Counsel in discovery are true and genuine copies of the original maintained in the regular course of business. (See also Exhibit 7).

scene to remain at least 15-feet behind the Canine.

4. Do not pursue beyond the point of last visual contact when in pursuit of a suspect.

## B. *Apprehending Fleeing Suspects/Prisoners*

The decision of the handler to utilize a Canine for apprehension will be based on the classification of the offense (i.e., felony or misdemeanor) and the threat level posed by a subject to either a Deputy or civilian, or both. The Handler must take into consideration the safety of any and all civilians in the area.

2. The on-scene supervisor will assign a Deputy to assist the Canine Handler who will:

c. If physical evidence is observed while tracking or searching, quietly notify the handler. If the suspect is observed, do not rush forward, instead advise the handler immediately. Any sudden moves may cause the Canine to 'alert' and 'lock-on', resulting in a possible attack.

3. Depending on the seriousness of the crime, the Canine Team will be governed by the following guidelines:

a. *Felony Crime* - Whenever a Canine Team is utilized at any felony crime, the canine may or may not be 'on-lead' consistent with established 'handling and training' canine industry practices; however, non-confined open area searches and residential searches will be done 'on-lead'. When conducting searches, the canine will not be allowed to engage a subject unless the level of resistance has reached or exceeds Active Physical Resistance. The Handler will always consider the seriousness of the crime, the age and size of the subject, and if the subject refuses to come out of concealment/hiding before releasing or engaging the Canine. The Handler will announce verbally that the Canine will be released and allow ample time for the suspect to comply before releasing the Canine.

## ARGUMENT AND CITATION OF AUTHORITY

### I.  Standard of Review

Summary judgment is authorized only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552 (1986)* (emphasis added). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." Id., *477 U.S. at 322-23.*

The moving party bears the burden of proving that no genuine issue of material fact exists. In evaluating whether the moving party has satisfied this burden, the Court must consider all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); Korman v. HBC Florida, Inc., 182 F.3d 1291, 1293 (11th Cir. 1999).* Likewise, all reasonable doubts about the facts are to be resolved in favor of the non-moving party. *Twiss v. Curry, 25 F.3d 1551, 1555 (11th Cir. 1994).* "If reasonable minds could differ on any inferences arising from the undisputed facts, summary judgment should be denied." Id. Furthermore, "if a reasonable fact finder can draw more than one inference from the facts, and that inference creates a genuine issue of material fact," summary judgment is likewise

improper. _Holifield v. Reno_, 115 F.3d 1555, 1561 (11th Cir. 1997); _Augusta Iron & Steel Works v. Employers Ins. of Wausau_, 835 F.2d 855 (11th Cir. 1988).

In deciding a motion for summary judgment, the Court may not make credibility determinations[4], weigh the evidence, or decide which inferences to draw from the facts; these functions are solely within the province of the finders of fact (i.e., the jury). _Anderson, 477 U.S. at 249, 106 S.Ct. at 2510; Twiss, 25 F.3d at 1555_. If the record presents factual issues, the Court must not decide them; instead, the Court should deny the motion and proceed to trial. See _Burton v. Tampa Housing Auth._, 271 F.3d 1274, 1277 (11th Cir. 2001); _O'Neal v. United States_, 258 F.3d 1265, 1270 (11th Cir. 2001). Essentially, "the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." _Anderson, 477 U.S. at 251-52, 106 S.Ct. at 2512_. On a summary judgment motion based on qualified immunity, as we have in the instant case, the Court is required to resolve all issues of material fact in favor of the plaintiff. _Lee v. Ferraro_, 284 F.3d 1188, 1190 (11th Cir. 2002), citing _Sheth v. Webster_, 145 F.3d 1231, 1236 (11th Cir.1998). The Court then answers the legal question of whether the defendant [ ][is] entitled to qualified immunity under that version of the facts." _Thornton v. City of Macon_, 132 F.3d 1395, 1397 (11th Cir.1998). The Eleventh Circuit Courts have even gone

_____

[4] Plaintiff's prior criminal history is irrelevant as excessive force claims apply to the convicted and non convicted.

so far as to state that the "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 (11th Cir.2000). Nevertheless, for summary judgment purposes, the Court's analysis must begin with a description of the facts in the light most favorable to the plaintiff. See *Skrtich v. Thornton*, 280 F.3d 1295, 1299 (11th Cir.2002).

### (I) Plaintiff's False Arrest False Imprisonment Claims and Qualified Immunity

Plaintiff contends he was seized in violation of the 4th Amendment thus constituting a false arrest. That seizure occurred when Defendant "sicced" (released) his k-9 dog on the juvenile Plaintiff that resulted in a vicious biting and permanent scarring of the Plaintiff's leg and hospital treatment. *cf. Craft v. Genao, 2012 WL 12961101 (USDC MD Fla) (December 13, 2012)*. If Plaintiff allegations set forth in his verified complaint and his sworn deposition are true the same would establish a constitutional violation. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Circuit 2010). Likewise, the violation must clearly be established at the time of the violation. Id.

### (a) Plaintiff's 4th Amendment seizure was without probable cause.

Probable cause exists where the facts "within the collective knowledge of law-enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe a criminal offense has

been or is being committed. *Brown, at 734*. In the instant case, Plaintiff did not match the description of the robbers. Plaintiff did not threaten or make aggressive movements toward Defendant or any law-enforcement. Police radio transmission to the Defendant alerted Defendant that civilian children were in the area[5]. Defendant never saw Plaintiff with any type of weapons. Further, Plaintiff yelled that he was a student before the dog attack and Defendant did not halt, stop or order the dog to stand down. Likewise, there was no probable cause to arrest Plaintiff for obstruction as Defendant clearly ordered the dog to bite the wrong person and in Georgia a person has the right to resist an unlawful arrest. *Brooks v. State, 206 Ga. App. 485 (1992); Wagner v. State, 206 Ga. App. 180 (1992); Chaplin v. State, 141 Ga. App. 788 (1977)*. Moreover, whether there was probable cause is an issue of fact for a jury to decide. See *Diamond v. Maryland*, 395 F.Supp. 432, 442 (1979). Therefore, the 11th Circuit "collective knowledge," information shared by fellow officers is imputed to any one of their number, even those from different agencies. cf. *Craft v. Genao*. When this Court reviews the testimony of Defendant Henry it is undisputed that Defendant Henry had no firsthand or personal information of probable cause for any crime, had and only collective knowledge of a description which did not fit Plaintiff in any respect.

---

[5] Radio transmission also advised that the three (3) kids were not involved. (See Exhibit 2 – 4). This communication could be heard by Defendant Henry and the other officers through the radio transmission, as both dispatch and officers can hear communication that is being shared through the radio. (Ashby Rowland Depo. 25:14-25, 26:1, 2).

Plaintiff argues Henry violated his Fourth Amendment rights by falsely arresting him and then using excessive force in the course of the illegal arrest. Because Ooten argues the excessive force was a result of an illegal arrest, this claim is "subsumed in the illegal [] arrest claim and is not a discrete excessive force claim." *Jackson v. Sauls, 206 F.3d 1156, 1171 (11th Cir. 2000)*. Plaintiff also says Henry intentionally fabricated probable cause to unlawfully cite him as a juvenile.

In order to be entitled to qualified immunity on a false arrest claim, Henry must have had "arguable probable cause" to arrest Ooten. *Lee v. Ferraro, 284 F.3d at 1195*. "Whether an officer possesses . . . arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." *Brown v. City of Huntsville, 608 F.3d 724, 735 (11th Cir. 2010)*. The relevant inquiry is whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed probable cause existed to arrest Plaintiff." *Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004)* (quotation omitted). We evaluate whether an office had arguable probable cause based on "the information known to the defendant officers or officials at the time of their conduct. *Wilkerson v. Seymour, 736 F.3d 974, 978 (11th Cir. 2013)* (quotation omitted).

Henry does not allege he ever witnessed Ooten commit a crime. Instead, he

says he reasonably believed Ooten was a robbery suspect. However, as an effort to formulate probable cause, Defendant misleadingly represents in his motion for summary judgment that because Plaintiff's friend was wearing a backpack, Defendant Henry could reasonably presume there was a weapon therein. Yet, this contention presented to the Court does not stand because never once has Defendant Henry testified to seeing any individual with a backpack. It is only through Plaintiff's deposition testimony that this fact arises, and as Defendant Henry accurately states in his motion for summary judgment, the only fact relevant to his decision to deploy Kojak and detain Plaintiff is the information he at the time of the incident rather than 20/20 vision of hindsight.

If Henry is to be believed, then he acted on a "reasonable mistake" and did not violate Hudson's constitutional rights. *See* *Rodriguez v. Farrell*, *280 F.3d 1341, 1345–46 (11th Cir. 2002)*. But for qualified immunity, the Court must determine whether Ooten's rights were violated under Ooten's version of the facts. *Lee v. Ferraro, 284 F.3d at 1195*. But under 11th Circuit precedent, "[w]e do not weigh conflicting evidence or make credibility determinations; the [plaintiff's] evidence is to be accepted for purposes of summary judgment." *Wate v. Kubler, 839 F.3d 1012, 1018 (11th Cir. 2016).* Ooten's version of events not only conflicts with Henry's, but is also thoroughly supported by objective, documentary evidence that Ooten has provided. This Court "cannot allow a probable cause determination

to stand principally on the unsupported statements of interested officers, when those statements have been challenged and countered by objective evidence." *Kingsland, 382 F.3d at 1228.*

"Qualified immunity is, as the term implies, qualified. It is not absolute." *Kingsland, 382 F.3d at 1233.* Based on the facts as Ooten relates them, a constitutional violation surely happened. Based on Henry's story, it was a reasonable mistake. However, at summary judgment, it is not the Trial Court's role to decide which way tough facts point. Instead, the trial Court must accept the plaintiff's version of events and determine whether genuine material questions of fact exist that are best suited for a trial.

### (II)    Clearly Established Law at The Time and Defendant's Henry's use of Excessive Force

(A)    The 11th Circuit has held that use of a police canine to subdue a suspect when employed against an individual who presents no safety risk and compliant with police demands is excessive under the 4th Amendment. *Priester v. City of Rivera Beach Florida, 208 F.3d 919 (11th Circuit 2000).* In the instant case Defendant Henry could not do with a dog what he could not constitutionally do himself without a dog. Defendant Henry, certainly based on Plaintiff's version of the facts, could not have just shot Plaintiff in the leg to subdue him without constitutional liability. Defendant Henry's conduct with the k-9 was so far beyond the hazy border between excessive and acceptable that he had to know he was

violating the Constitution, whether with or without caselaw specifically on point. *cf. Jay v. Hendershott,* 579 F. App'x 948 (11th Circuit 2014)*, Fulton County policies for canines' deployment limits the amount of force to what is <u>reasonable</u> and <u>necessary</u> to secure a subject (Exhibit 6, pg. 3 of 13). Further, the canine handler must take into consideration the safety of any and all civilians in the area (Exhibit 6, pg. 8 of 13). The policy notes that "sudden movements", even by fellow officers, may cause the canine to "alert" and lock-on" and attack (Exhibit 6, pg. 8 of 13). Lastly, the canine handler "should not engage a subject unless the level of resistance has <u>reached</u> <u>or</u> <u>exceeds</u> <u>active</u> <u>physical</u> <u>resistance</u> . . . after verbal commands to the subject that the canine will be released <u>and</u> <u>after</u> <u>ample</u> time for the subject to comply <u>before</u> releasing the canine (Exhibit 6, pg. 8 of 13). Defendant Henry, based on the facts set forth by Plaintiff, did not follow the established policies.

Moreover, Plaintiff testimony and verified complaint is directly contrary to Defendant's testimony about what happened and a reasonable jury could conclude that Defendant Henry used an objectively unreasonable amount of force and Defendant's motion for summary judgment should be denied. *Priester v. City of Rivera Beach Florida,* 208 F.3d 919 (11th Circuit 2000).

**Defendant Henry Used Excessive Force in Violation of Plaintiff's Fourth Amendment Rights**

A genuine "excessive force" claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest. *Bashir v. Rockdale County, Ga.,* 445 F.3d 1323, 1332 (11th Cir.2006). The Supreme Court has instructed that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor,* 490 U.S. 386. 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In the instant case, Henry asserts he is entitled to qualified immunity. As stated above, to determine whether such immunity applies, the Court must examine whether "(1) if the facts, **construed in the light most favorable to the plaintiff**, show that a constitutional right has been violated; and (2) whether the right violated was clearly established." *Bailey v. City of Miami Beach,* 476 Fed.Appx. at 195. (emphasis added).

**Excessive Force Violation of Plaintiff's Constitutional Rights**

It is a core Fourth Amendment principle that law-enforcement officers may not unnecessarily harm an individual during arrest. *Hadley v. Gutierrez,* 526 F.3d 1324, 1330 (11th Cir.2008). Courts have dictated unambiguously that the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the

danger to the officer, and the risk of flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865 (1989); *Lee v. Ferraro*, 284 F.3d 1188 (2002); *See also, e.g., Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir.1986) (holding that, in determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted).

### (B) Failure to remove the canine promptly

Plaintiff's excessive force claim encompasses the fact that when Plaintiff told Defendant Henry he was a student and was not a suspect Plaintiff's constitutional rights were violated when the dog was not immediately stopped before and after the biting attack *cf. Trammell v. Thomason*, 335 Fed. App'x 835, 843 (11th Circuit 2009).

### (III)    Plaintiff's State Law Claims Against Defendant Henry in His Individual Capacity

Plaintiff incorporates by reference herein his arguments set forth aforementioned as to his negligence claim and to Defendant's Henry official immunity on State law claims.

In the context of official immunity, "[a]ctual malice requires a showing that the actor had a deliberate intention to do wrong, and . . . willful conduct is based on an actual intention to do harm or inflict injury." *Griswold v. Collins*, 318 Ga. App. 556, 558(2)(a), 734 S.E.2D 425 (2012) (factfinder may infer from evidence that a

defendant acted with actual malice). *City of Atlanta v. Shavers, 326 Ga. App. 95, 98 (2)(b), 756 S.E.2d 204 (2014).* In this case, Defendant Henry clearly intended to viciously and recklessly seize Plaintiff.

Defendant Henry argues he is entitled to official immunity from the Plaintiff's state law claims for false and excessive detention and intentional infliction of emotional distress, and for punitive damages. Official immunity protects public officers sued in individual capacities for misconduct in carrying out discretionary or ministerial activity. In Georgia, an officer:

> "may be liable for injuries and damages caused by the
>
> negligent performance of, or negligent failure to perform,
>
> their ministerial functions and may be liable for injuries
>
> and damages if they act with actual malice or with actual
>
> intent to cause injury in the performance of their official functions."

(Cameron v. Lang, 274 Ga. 122, 123 (2001)).

In other words, to be liable under state law for the performance of a discretionary function, as Defendant Henry was undertaking here, Henry must have been acting with actual malice or intent to injure.

Plaintiff argues that Defendant Henry acted with actual malice because he put a bogus obstruction charge on Plaintiff. In the context of official immunity, actual malice means a deliberate intention to do a wrongful act."

**(IV)** **Conclusion**

WHEREFORE, Plaintiff has clearly presented issues of material fact as to each count alleged in his Complaint and as such, Plaintiff respectfully requests that this Court deny Defendant's Motion for Summary Judgment.


RESPECTFULLY SUBMITTED, this 29th day of October 2021.


**LAW OFFICES OF DWIGHT L. THOMAS, P.C.**


*/s/ Dwight L. Thomas*

2296 Henderson Mill Rd. NE
Suite 304
Atlanta, GA 30345
Phone: 404-522-1400
Fax: 770-723-9115
dwightl654@gmail.com

Dwight L. Thomas, Esq.
Georgia Bar No.: 704825
*Attorney for Plaintiffs'*

| | | |
|---|---|---|
| RODNEY OOTEN, SR. o/b/o) | ) | |
| RODNEY OOTEN, JR. (as legal | ) | |
| guardian and natural father) and | ) | CIVIL ACTION FILE |
| RODNEY OOTEN, JR., | ) | NO. 1:19-CV-0237-ELR |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FULTON COUNTY, GEORGIA and | ) | |
| FULTON COUNTY SHERIFF'S | ) | |
| DEPARTMENT and/or FULTON | ) | |
| COUNTY POLICE DEPARTMENT | ) | |
| And SERGEANT COREY HENRY, | ) | |
| individually and in his official | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on this the 29th day of October, 2021, I presented this ***PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*** in Times New Roman, 14-point type in accordance with L.R. 5.1C, and that I electronically filed the document with the Clerk of Court using the CM/ECF system, which will automatically send notification of the filing to the following counsel of record:

Kaye Woodard Burwell
Interim County Attorney
141 Pryor Street, S.W.

Suite 4038
Atlanta, GA 30303

Amelia Joiner
Assistant County Attorney
141 Pryor Street, S.W.
Suite 4038
Atlanta, GA 30303

This 29th day of October 2021.

By:     ***/s/Dwight L. Thomas***
Dwight L. Thomas
Georgia Bar No. 704825
*Attorney for Plaintiff*

Dwight L. Thomas, P.C.
2296 Henderson Mill Road, Suite 304
Atlanta, GA 30345
Tel: 404-522-1400
Fax: 770-723-911